UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHIREVELL WILLIAMS,

    Plaintiff,

v.                                Case No.  8:19-cv-1548-T-SPF

ANDREW M. SAUL,
Commissioner of the Social
Security Administration,[1]

    Defendant.
_____/

## ORDER

Plaintiff, appearing *pro se*, seeks judicial review of the denial of her claims for Supplemental Security Income ("SSI") and period of disability and disability insurance benefits ("DIB"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

    **I.**    **Procedural Background**

Plaintiff filed applications for SSI and a period of disability and DIB (Tr. 229-30). The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 92, 105, 122, 135). Plaintiff then requested an administrative hearing (Tr. 162-63). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr.

---

[1] Andrew M. Saul became Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Mr. Saul is substituted for Acting Commissioner Nancy A. Berryhill as Defendant in this suit.

36-61). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and denied Plaintiff's claims for benefits (Tr. 16-24). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-4). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.   Factual Background and the ALJ's Decision

Plaintiff was born on February 10, 1965 and was 53 years old on the date of her administrative hearing (49 on her alleged onset date). Plaintiff claimed disability beginning October 20, 2014, when she was electrocuted while working as a fry cook at a KFC (Tr. 37, 229). After dropping out of high school, Plaintiff earned her GED and at the time of her hearing was working part-time at a Winn-Dixie seafood counter (Tr. 18). She lived alone on her uncle's boat (Tr. 39). She ate prepackaged meals she bought at Winn-Dixie, and her sister helped with her laundry (Tr. 50). She drove to and from work (Tr. 39). In addition to her job at the seafood counter and her past job as a fry cook, Plaintiff's work experience included work as a security guard (Tr. 5). Plaintiff alleged disability due to asthma, leg problems, back problems, and memory problems (Tr. 141).

In rendering his August 16, 2018 administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through September 30, 2018 (her date last insured, or "DLI," for DIB purposes) and had not engaged in substantial gainful activity since October 20, 2014, the alleged onset date (Tr. 18).[2] After conducting a hearing and

---

[2] The ALJ determined that Plaintiff did not earn enough at Winn-Dixie for it to constitute substantial gainful activity (Tr. 18).

reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: "asthma, cervical and lumbar degenerative disc disease, and status-post electric shock" (Tr. 19). Notwithstanding these impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 20). The ALJ then concluded that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following limitations: "The individual can frequently climb ramps and stairs; can occasionally climb ladders, ropes and scaffolds; and can occasionally stoop, kneel, crouch and crawl. The individual should avoid frequent exposure to hazardous moving machinery and unprotected heights." (Tr. 20). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 21-22).

Considering Plaintiff's impairments and the assessment of a vocational expert ("VE"), the ALJ determined Plaintiff could perform her past relevant work as a security guard (Tr. 24). The ALJ found Plaintiff not disabled (*Id.*).

### III.   Legal Standard

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or

which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

**IV.   Analysis**

In a one-page letter brief, *pro se* Plaintiff argues she is unable to work because of her muscle weakness, breathing problems, back pain, and left leg, foot, and knee pain

(Doc. 20).³ She also contends she "slipped and fell on my job, I have more injuries." (*Id.* at 1). She explained in her complaint (Doc. 1) that she slipped and fell at her job at a Dollar General in May 2019 (after the ALJ's decision) and suffered injuries on top of those she testified to at her April 9, 2018 hearing. Attached to her complaint is a Florida Workers' Compensation Uniform Medical Treatment/Status Reporting Form regarding her most recent accident (Doc. 1-2). For the following reasons, the ALJ applied the correct legal standards, and the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence.

> **A.** Whether the ALJ properly considered Plaintiff's subjective pain complaints in assessing Plaintiff's RFC

Construing Plaintiff's brief liberally, as the Court is required to do, Plaintiff appears to argue the ALJ did not properly consider her subjective complaints of muscle weakness, breathing problems, and back and leg pain when formulating her RFC (Doc. 20 at 1). A claimant may establish "disability through [her] own testimony of pain or other subjective symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). A claimant seeking to establish disability through her own testimony must show: (1) evidence of an underlying condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be

---

³ Although Plaintiff was represented by counsel at her administrative hearing (*see* Tr. 36), she submitted a notice of withdrawal of counsel to the agency on August 22, 2018, a week after the ALJ's decision (Tr. 12). Plaintiff proceeded *pro se* before the Appeals Council and proceeds *pro se* in her appeal to this Court. Courts hold *pro se* pleadings to a less stringent standard; therefore, the undersigned construes Plaintiff's complaint and letter brief liberally. *Tannenbaum v. U.S.*, 148 F.3d 1262, 1263 (11th Cir. 1998) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.").

expected to give rise to the claimed pain. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). Social Security Ruling 16-3p cautions that an ALJ's "subjective symptom evaluation is not an examination of an individual's character." *Id.* When making a symptom evaluation determination, the ALJ considers all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the record. 20 C.F.R. §§ 404.1529, 416.929. When the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so. *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995).

The regulations define "objective evidence" to include medical signs shown by medically acceptable clinical diagnostic techniques or laboratory findings. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). "Other evidence" includes evidence from medical sources, medical history, and statements about treatment the claimant has received. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Additionally, the ALJ considers such factors as treatment history; the type, dosage, effectiveness, and side effects of any medications taken; treatment other than medications; any other measures used for relief of pain or other symptoms; any precipitating and aggravating factors; medical source opinions; statements by the claimant or others about pain and other symptoms; information about prior work; and evidence of daily activities. *See* 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3). In the end, subjective complaint evaluations are the province of the ALJ. *Mitchell v. Comm'r of Soc. Sec.,* 771 F.3d 780, 782 (11th Cir. 2014).

Here, the ALJ relied on boilerplate language in assessing Plaintiff's subjective pain complaints:

> Thus, after careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 21-22). This language directly addresses the Eleventh Circuit's pain standard and is not improper *if* supported by substantial evidence. *See Danan v. Colvin*, 8:12-cv-7-T-27TGW, 2013 WL 1694856, at * 3 (M.D. Fla. Mar. 15, 2013), *report and recommendation adopted at* 2013 WL 1694841 (M.D. Fla. Apr. 18, 2013).

Here, the undersigned finds that it is. In evaluating Plaintiff's subjective complaints, the ALJ summarized Plaintiff's testimony (R. 20-21) and compared it to the records of treating neurologist Thomas Newman, M.D., as well as Plaintiff's emergency room records from the date of her accidental electrocution at KFC, her CT scans and nerve conduction studies, and her treatment at the Health Department for knee pain and shortness of breath (Tr. 22-23). The ALJ noted Plaintiff's testimony that her lower back hurts almost every day at a pain severity level of eight out of 10 (Tr. 21, 46). Her knee locks up every morning and sometimes "swells up like a balloon" (Tr. 21, 44), she is unable to sit or stand for more than 30 minutes at a time (Tr. 21, 45, 47, 49), and her return to part-time work at Winn-Dixie in November 2016 exacerbated her symptoms and is only possible because her employer accommodates her need to sit down on a stool and to stop working as needed (Tr. 21, 51-52).

Plaintiff's medical records contrast with her testimony, as the ALJ pointed out (Tr. 22). Plaintiff went to the emergency room at Bayfront Medical Center on October 20, 2014, the date of her KFC accident (Tr. 356-72). She was discharged the same day with instructions to follow up with her primary care doctor, take Motrin or Tylenol as needed for discomfort, return if symptoms worsen, and hydrate (Tr. 356).[4] Plaintiff followed up with neurologist Dr. Newman in November 2014, about one month after her accident (Tr. 378). Plaintiff described the accident to Dr. Newman:

> She suffered an electric shock injury on that day from a cable wire. While she did not fall, she was jerked from the shock. She went to Bayfront Hospital and was released. Subsequent to that, she has had persistent numbness in the left arm and left leg. She also complains of memory loss, although there was no direct head trauma. She has had neck pain and lower back pain as well. She tried Motrin but did not get relief from this and continues to have persistent pain in the left arm and in the neck and lower back.

(Tr. 378). Dr. Newman's physical examination of Plaintiff yielded normal results – her lumbar and cervical spine as well as her head and neck exhibited no muscle spasms and a normal range of motion (Tr. 379-80). She did not appear in any acute distress. Her "attention and concentration [were] normal, language and speech [were] normal, mood and affect appropriate, and oriented to time, place, and person." (Tr. 380). Dr. Newman ordered MRIs of Plaintiff's brain and lumbar and cervical spine and nerve conduction and EMG studies of her left arm and leg (*Id*.).

After Plaintiff was unable to tolerate the MRI scans (*see* Tr. 373), Dr. Newman ordered CT scans instead. Her brain CT scan revealed: "1. Medial deviation of the left

---

[4] The administrative record does not appear to contain all of Plaintiff's ER records from Bayfront. Nonetheless, Plaintiff was discharged the same day with minimal care instructions.

9

medial orbital wall; this may be manifestation of remote trauma. Otherwise, no acute fracture is seen. 2. Otherwise, no acute intracranial abnormality." (Tr. 382). Her cervical spine CT scan showed "[p]osterior disc osteophyte complex of the C5-6 level which indents the thecal sac leading to mild spinal stenosis and mild bilateral foraminal narrowing." (R. 383) And her lumbar spine CT scan showed "[d]egenerative disc disease at multiple levels leading to regions of spinal stenosis and foraminal narrowing as enumerated above most pronounced at L4-5 level." (Tr. 384). Her nerve conduction and EMG studies of her left leg and arm were normal (Tr. 376-77).

Plaintiff followed up with Dr. Newman in December 2014 (Tr. 373). Although she complained of continued problems in her left arm and leg, Dr. Newman noted that the results of Plaintiff's nerve conduction studies were normal (*Id.*). He prescribed Neurontin for her left side neuropathic pain (Tr. 374). The next month (January 2015), Plaintiff reported that the Neurontin and Ultram Dr. Newman prescribed for pain were "helpful." (Tr. 370). Dr. Newman characterized her lumbar and cervical scans as "unremarkable" and wrote: "The patient does not have any objective findings to document her persistent subjective complaints." (Tr. 370-71). At Plaintiff's final appointment two weeks later, Dr. Newman noted Plaintiff's brain scan also was "unremarkable" despite her continued complaints of neck and lower back pain and headaches (Tr. 367). The doctor observed:

> From the injury of October 20, 2014, this patient has reached maximum medical improvement. She has no evidence of permanent neurological impairment from that accident and no specific restrictions neurologically regarding that accident. I have refilled her medications today. Further refills can be obtained from her primary care physician. No further follow up in this office is planned.

(Tr. 368).[5]

In May 2016 – over a year later – Plaintiff complained of left knee pain and swelling to her treating physician during a Health Department appointment (Tr. 393). George Robinson, M.D. noted "both knees have small effusions, the l[eft] knee was subjectively painful when tested for lateral stability but other than bilat. effusions, the knees were objectively WNL [within normal limits]." (Tr. 395). A left knee X-ray conducted by Nathan Hameroff, M.D. later that month revealed "no evidence of fracture, dislocation or intrinsic bone disease." (Tr. 419) Her patella was intact, although Dr. Hameroff noted some bony abnormalities in Plaintiff's shin bone (*Id.*). During a follow-up appointment with the Health Department in August 2016, Plaintiff again complained of persistent knee pain "but is unaware of any particular precipitating trauma[.]" (Tr. 437). Dr. Robinson observed no motor dysfunction and prescribed Motrin and Tylenol for Plaintiff's pain (Tr. 439).

Regarding Plaintiff's complaints of breathing problems, she testified to asthma flare-ups at night, although she admitted she did not take any asthma medication (Tr. 56). Health Department records document Plaintiff's complaints of shortness of breath and characterize it as "extrinsic asthma without status asthmaticus disorder." (Tr. 434). Plaintiff also complained of shortness of breath to Dr. Newman (Tr. 367, 370, 373, 378, 393) and was prescribed an inhaler to use as necessary (Tr. 391). As the ALJ notes, however, Plaintiff routinely denied chest pain, pressure, or tightness; exercise intolerance;

---

[5] Indeed, Plaintiff testified that her neck pain had resolved: "It's nothing really nothing bothering my neck." (Tr. 47).

dizziness; palpitations; snoring; wheezing; fatigue; and syncope (Tr. 27, 367, 370, 373, 378, 393, 437).

Plaintiff's treatment was conservative overall. Dr. Newman prescribed Plaintiff Neurontin and Ultram for pain and, finding no permanent neurological deficits from her accident, released her to the care of her primary care doctor (Tr. 368, 370). There is no evidence Plaintiff continued taking these medications once they ran out. Health Department physicians prescribed her Motrin and Tylenol for pain (among medications for other issues) (Tr. 389-92). Although she was prescribed an inhaler for asthma attacks, she testified she was not taking any asthma medications (R. 56). For her pain, Plaintiff testified she treated it by "I would just say every day aspirin and I'm really not a pill taker but the pain I have to take something." (Tr. 50). This conservative treatment history is inconsistent with a disability finding. *See* 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v); *Pennington v. Comm'r of Soc. Sec.*, 652 F. App'x 862, 873 (11th Cir. 2016).

Considering this, Plaintiff has not shown that the ALJ ran afoul of the Eleventh Circuit's pain standard. *See Holt*, 921 F.2d at 1221. The ALJ articulated specific and adequate reasons for discrediting Plaintiff's subjective pain complaints. *Foote*, 67 F.3d at 1561-62. To the extent Plaintiff asks the Court to re-weigh the evidence or substitute its opinion for that of the ALJ, it cannot. If the ALJ's findings are based on the correct legal standards and are supported by substantial evidence – as they are here – the Commissioner's decision must be affirmed even if the undersigned would have reached a different conclusion. *See Bloodsworth*, 703 F.2d at 1239. On this record, the ALJ did not err in considering Plaintiff's subjective complaints.

Construing Plaintiff's brief and complaint liberally, she also suggests that substantial evidence does not support the ALJ's RFC determination that she can perform a limited range of light work. A claimant's RFC is the most work she can do despite any limitations caused by her impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In formulating a claimant's RFC, the ALJ must consider all impairments and the extent to which they are consistent with medical evidence. 20 C.F.R. §§ 404.1545(a)(2), (e); 416.945(a)(2), (e). An ALJ may not arbitrarily reject or ignore uncontroverted medical evidence. *McCruter v. Bowen,* 791 F.2d 1544, 1548 (11th Cir. 1986) (administrative review must be of the entire record; accordingly, ALJ cannot point to evidence that supports the decision but disregard other contrary evidence). A claimant's RFC is a formulation reserved for the ALJ, who, of course, must support his findings with substantial evidence. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c); *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's residual functional capacity is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive."); *Cooper v. Astrue*, 373 F. App'x 961, 962 (11th Cir. 2010) (the assessment of a claimant's RFC and corresponding limitations are "within the province of the ALJ, not a doctor.").

Plaintiff does not offer any specific argument undermining the ALJ's RFC determination. In formulating Plaintiff's RFC, the ALJ relied on Dr. Newman's treatment records, Plaintiff's cervical and lumbar imaging, her brain scan, nerve conduction and EMG studies, records from Plaintiff's Health Department appointments, as well as Plaintiff's testimony (all summarized above). In particular, Dr. Newman

restricted Plaintiff to "light duty" pending the results of her brain and spine scans and nerve conduction studies, then ultimately released her from his care without restriction after discovering no neurological basis for Plaintiff's subjective complaints (Tr. 368, 371, 374). Health Department physicians treated Plaintiff conservatively. And Jack Rothman, M.D., the state agency non-examining physician who reviewed Plaintiff's records at the reconsideration level, opined she is capable of light work (Tr. 132, 135) Considering this – and the fact that Plaintiff points to no evidence to the contrary – there is substantial evidentiary support for the ALJ's decision that Plaintiff could perform light work.

### B. Sentence Six Remand

Lastly, Plaintiff attached a document to her complaint that she did not submit to the Commissioner during the administrative review process (*see* Doc. 1-2). Plaintiff does not directly argue that this evidence supports remand. Nonetheless, evidence that a claimant presents to the Court and not to the administrative agency must be considered under a sentence six analysis. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1261 (11th Cir. 2007); *Jack v. Comm'r of Soc. Sec.*, No. 2:14-cv-723-FtM-38MRM, 2015 WL 10353144, at *7 (M.D. Fla. Dec. 30, 2015).

"The sixth sentence of § 405(g) plainly describes an entirely different kind of remand [from the fourth sentence], appropriate when the district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding." *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990). Sentence six provides a federal court "with the power to remand the application for benefits to the Commissioner for the taking of additional evidence upon a

showing 'that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" *Ingram*, 496 F.3d at 1261 (quoting 42 U.S.C. § 405(g)). Sentence six allows a claimant the opportunity to present new and material evidence to the district court that was not available to the Commissioner or the Appeals Council. *Id*. The evidence must be new and material and not a part of the administrative record. *Id*.

To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that is material (i.e., relevant and probative so that there is a reasonable possibility that it would change the administrative result); and (3) there is good cause for the plaintiff's failure to submit the evidence at the administrative level. *See Jackson v. Chater*, 99 F.3d 1086, 1090-92 (11th Cir. 1996); *Delker v. Comm'r of Soc. Sec.*, 658 F. Supp. 2d 1340, 1366-67 (M.D. Fla. 2009). A sentence six remand may be warranted even in the absence of error by the Commissioner, if new and material evidence becomes available to the plaintiff. *Id*.

Here, Plaintiff attached a Florida Workers' Compensation Uniform Medical Treatment/Status Reporting Form to her complaint, regarding a workplace accident Plaintiff suffered on May 22, 2019 while working at Dollar General (Doc. 1-2). According to the form, Plaintiff sprained her left ankle and suffered a knee and lower leg contusion and a lumbar sprain on that date. Robert Haight, Jr., M.D., her treating physician following the accident, limited Plaintiff to lifting less than 10 pounds, pulling and pushing less than 40 pounds, and walking for only 45 minutes per hour (*Id*. at 2).

The form does not relate to the time period on or before the date of the ALJ's decision – it was prepared over six months after the ALJ's decision (issued August 16, 2018) and seven months after Plaintiff's date of last insured (September 30, 2018). Additionally, the form documents a new workplace injury Plaintiff suffered in May 2019, after the relevant time period. In other words, it does not substantiate that Plaintiff was disabled during the relevant time period. As such, the documents are not material, and a sentence six remand is not warranted.

Accordingly, it is hereby

ORDERED:

1. The decision of the Commissioner is affirmed.

2. The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

**ORDERED** in Tampa, Florida, on November 3, 2020.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE